WILLIE MATHEWS,                                  CASE NO.: 3:99-CIV-1117-J-32MMH

        Plaintiff,

vs.

JAMES V. CROSBY, JR., et. al.,

        Defendants.

_____/

## DEFENDANTS CROSBY'S AND GIEBEIG'S MOTION TO TAX ATTORNEY'S FEES AND EXPENSES AS COSTS PURSUANT TO 42 U.S.C. § 1988 AND INCORPORATED MEMORANDUM OF LAW

COMES NOW, Defendants, James V. Crosby, Jr. ("Crosby") and Tim Giebeig ("Giebeig"),

by counsel and pursuant to applicable Federal Rules of Civil Procedure, 42 U.S.C. § 1988 and the

statutory authority cited herein, and hereby file this Motion to Tax Attorney's Fees and Expenses as

Costs pursuant to 42 U.S.C. § 1988 and Incorporated Memorandum of law as follows:

### BACKGROUND INFORMATION

1.      This Court entered an Order on January 20, 2004, granting, <u>inter alia</u>, Defendants

Crosby's and Giebeig's Motions for Summary Judgment.

2.      This Court subsequently entered an Order on February 11, 2004 which set forth that

all Motions for Attorney's Fees and Costs must be filed by March 9, 2004.

### DEFENDANTS ARE ENTITLED TO THE RECOVERY OF ATTORNEY'S FEES AND EXPENSES

3.      Plaintiff initiated this action against government officials, Crosby and Giebeig, under

the alleged authority of 42 U.S.C. § 1983.

*409*

4.     There is statutory authority for the award of attorneys fees and costs to the prevailing party in this action under each of the statutes cited by Plaintiff's Complaint.

5.     There is no question Crosby and Giebeig are prevailing parties. This Court granted summary judgment in their favor on January 20, 2004.

6.     The undersigned law firm was retained by the State of Florida Department of Financial Services, Division of Risk Management (hereinafter "the State of Florida") to represent Crosby and Giebeig in this action. The State of Florida arranged and agreed to pay for representation because Crosby and Giebeig were sued by Plaintiff for alleged wrongdoing as government officials.

7.     Accordingly, any attorney's fees and costs that may be recovered upon the granting of this motion will be provided to the State of Florida except to the extent there are specified costs which have been incurred by the undersigned law firm which were not charged to or reimbursed by the State of Florida according to the terms of the agreement established between the State of Florida and the undersigned law firm. If the Court deems it necessary, the costs incurred that were not reimbursed by the State of Florida can be segregated. Regardless, all of the expenses and costs addressed in this motion were incurred as a result of this action and are reimbursable under 42 U.S.C. § 1988.

8.     Specifically, the rates of attorneys fees that were charged to the State of Florida by the undersigned law firm are as follows: $80.00 per hour from February 11, 2000 through September 30, 2002; $85.00 per hour from October 1, 2002 through September 30, 2003; and $95.00 from October 1, 2003, through the date of the instant motion.

9.     These rates are reasonable and do not exceed the going rate for these services within

2

this community.

10.     As this Court is aware, this action required the litigation of an exceedingly high number of motions and the collection and review of an exorbitant number of documents at significant expense that will ultimately fall upon the citizens of the State of Florida. The discovery that was conducted in this action also required attendance at numerous depositions throughout the State of Florida as well as Seattle, Washington and Phoenix, Arizona.

11.     From February 11, 2000 through March 7, 2004 the number of hours in attorney time that was expended in this action amounts to 2,883.9 hours which resulted in $254,012.00 in attorney's fees.

12.     From February 11, 2000 through March 7, 2004 the number of hours in legal assistant time that was expended in this action amounts to 83.85 hours which resulted in $ 3,393.50 in legal assistant fees for this time period.

13.     The dollar amount for the attorney's fees and legal assistant fees that have been incurred for the defense of Crosby and Giebeig from February 11, 2000 though March 7, 2004 amounts to $257,405.50. This amount is reasonable in light of the extensive litigation in this action over the past four years.

14.     The extent of the litigation in this action also resulted in significant expenses. A substantial portion of the costs resulted from the retention of an expert witness in the field of corrections that became necessary after Plaintiff identified an expert and disclosed an alleged expert report. These fees are especially high because a large portion of the voluminous documents Plaintiff claimed to be relevant were reviewed by Crosby's and Giebeig's expert in order to address the opinion of Plaintiff's expert and the documents which Plaintiff claimed to create a cause of action.

3

15.    The dollar amount for expenses that are allowed under 42 U.S.C. § 1988, that are not

ordinarily recoverable under 28 U.S.C. § 1920, are itemized below:

| | | |
|---|---|---|
| A. | Postage | $2,313.04 |
| B. | Courier Expenses(Fed Ex / UPS) | $383.07 |
| C. | Long Distance Telephone Calls | $360.62 |
| D. | Long Distance Conference Calls | $4,433.21 |
| E. | Travel Expenses | $6,185.17 |
| F. | Expert Witness Fees and Expert Witness Deposition Fees | $16,794.48 |
| G. | Videotapes | $46.73 |
| H. | CD ROM | $18.00 |
| | **TOTAL** | **$30,534.32** |

16.    Pursuant to 42 U.S.C. § 1988 Crosby and Giebeig are entitled to be reimbursement

for the full amount of attorney's fees and expenses identified above.

17.    A Motion to Tax Costs under 28 U.S.C. § 1920 is filed contemporaneously with this

motion to recover fees allowed under this section.

18.    This Court has indicated to the parties that the entitlement to attorney's fees and costs

under 42 U.S.C. § 1988 shall be litigated separately from the amount of such fees and costs that is

claimed to be due.  Crosby and Giebeig will submit the documents and any other proof necessary

to establish the amount of the attorney's fees and costs referenced herein should this Court grant

entitlement to such costs or sooner should the Court so Order.

4

19.     To the extent additional attorney's fees and costs are being incurred for the litigation of this issue and any other litigation in this action, beyond March 7, 2004, Crosby and Giebeig reserve the right to seek reimbursement for these costs.

WHEREFORE, Defendants, JAMES V. CROSBY, JR. and TIM GIEBEIG, move this Court for the entry of an Order granting the foregoing motion awarding attorney's fees and expenses and granting leave to submit proof of same.

## MEMORANDUM OF LAW

### DISCRETION FOR AWARDING ATTORNEY'S FEES

Crosby and Giebeig should be permitted to recover the full amount of the of attorney's fees and costs incurred for their defense in this action because they are prevailing parties as provided for by statute and because Plaintiff's lawsuit was frivolous, unreasonable or without foundation. The origin of the discretion to award attorney's fees to a prevailing party in a § 1983 action under Title 42 is statutory. See B & J Music, Inc. V. McAuliffe, 719 F. 2d 1536, 1538 (11th Cir. 1983). Title 42 U.S.C. § 1988 provides "[i]n any action or proceeding to enforce a provision of . . . 1983 . . . , the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs . . . ." Title "42 U.S.C. § 1988 allows attorney's fees to be treated as part of the costs of litigation." Brown v. City of Palmetto, Ga., 681 F. 2d 1325, 1326 (11th Cir. 1982).

The Eleventh Circuit has ruled that a district court may in its discretion award attorney's fees to a prevailing defendant "if the plaintiff's action is frivolous, unreasonable or without foundation, even though not brought in subjective bad faith." Brown v. City of Palmetto, Ga., 681 F. 2d 1325, 1327 (11th Cir. 1999) (citing Christiansburg Garment Co. v. EEOC, 434 U.S. 412 (1978)). The

ruling in Christiansburg was based upon the Supreme Court's belief that "Congress wanted to ensure that defendants could be protected from burdensome litigation having no legal or factual basis." Bruce v. City of Gainesville, Ga., 177 F. 3d 949, 951 (11th Cir. 1999).

It is appropriate to award attorney's fees in favor of Crosby and Giebeig under the applicable discretionary standards. "A district court may in its discretion award attorney's fees to a prevailing defendant in a Title VII or section 1983 action upon a finding that the plaintiff's lawsuit was frivolous, unreasonable, or without foundation." Sullivan v. School Bd. of Pinellas Co., 773 F. 2d 1182 (11th Cir. 1985) (citing Christiansburg, 434 U.S. at 421). The Eleventh Circuit has established criteria for guiding the inquiry into whether a plaintiff's case meets the Christiansburg standards. Sullivan, 773 F. 2d at 1189; See also Walker v. Nationsbank of Fla. N.A., 53 F. 3d 1548, 1559 (11th Cir. 1995). These factors include: (1) whether the plaintiff established a prima facie case; (2) whether the defendant offered to settle; and (3) whether the trial court dismissed the case prior to trial or held a full blown trial. Sullivan, 773 F. 2d at 1189.

Under the standard established in Sullivan, an award of attorney's fees for Crosby and Giebeig is well founded. Id. Plaintiff did not establish a prima facie case of liability under § 1983. In order to do so, Plaintiff had to establish Crosby and Giebeig either personally participated in the alleged abuse of Plaintiff or that a causal connection existed between their actions and the actions of Defendant correctional officers that allegedly committed the abuse. Cottone v. Jenne, 376 F. 3d 1352, 1359 (11th Cir. 2003).

This Court's Order dated January 20, 2004, found that Plaintiff "failed to create a genuine issue of material fact concerning Crosby's and Giebeig's liability under § 1983 for the alleged constitutional violations." Specifically, this Court stated that "[a]s a matter of law, the record fails

6

to establish that either Crosby or Giebeig 'personally participated in the alleged unconstitutional conduct' or that 'there is a causal connection between the actions of Crosby or Giebeig and the alleged constitutional deprivation . . . .'" (citations omitted). This Court further found that the record was "insufficient as a matter of law to create liability for either Crosby of Giebeig under § 1983."

Plaintiff also failed to establish a cause of action for his charges of conspiracy and the intentional infliction of emotional distress against Crosby and Giebeig. An award of attorney's fees is especially appropriate because Plaintiff failed to establish a prima facie case against Crosby and Giebeig on any of the claims alleged against them.

Plaintiff also rejected a reasonable settlement offer. Defense counsel attended mediation on behalf of Crosby and Giebeig at significant expense on April 10, 2000. Despite the fact that Crosby and Giebeig believed Plaintiff's claims were meritless and unreasonable, a reasonable settlement offer was extended to Plaintiff which he rejected. Crosby's and Giebeig's settlement offer was an attempt to avoid the costs that are the very subject of the instant motion. Plaintiff's unreasonable rejection of the offer to settle resulted in significant litigation costs that are now recoverable under 42 USC § 1983.

It is significant that Plaintiff's claims against Crosby and Giebeig were disposed of prior to trial. The resolution of Plaintiff's claims against Crosby and Giebeig, by the granting of their Motions for Summary Judgment establishes Plaintiff failed to prove a single claim against Crosby and Giebeig that was worthy of trial. "Claims where findings of "frivolity" have been sustained typically have been decided in the defendant's favor on a motion for summary judgment or a Fed. R. Civ. P. 41(b) motion for involuntary dismissal." Sullivan, 773 F. 2d at 1189; Church of Scientology of California v. Cazares, 683 F. 2d 1272 (5th Cir. 1981) (affirming the district court's

7

award of attorneys' fees to prevailing § 1983 defendant following summary judgment on basis that action was frivolous, unreasonable and groundless); <u>Jones v. Dealers Tractor and Equipment Co.</u>, 634 F. 2d 180 (5th Cir. 1981) (affirming district court's application of the <u>Christiansburg</u> standard finding that action was frivolous, unreasonable or groundless and assessing attorney's fees to prevailing defendant following summary judgment); <u>Beard v. B.J. Annis</u>, 730 F. 2d 741 (11th Cir. 1984) (affirming district court's use of <u>Christiansburg</u> factors to determine if § 1983 plaintiff's action was frivolous, unreasonable or without foundation and assessment of attorney's fees to prevailing defendant). The disposal of all claims brought against Crosby and Giebeig at the summary judgment stage lends great weight to support the finding that Plaintiff's claims were frivolous, unreasonable, and without foundation.

Summary judgment, by itself, may not always show that a claim is frivolous, but in the instant action there are additional factors that add weight to the conclusion that Plaintiff's claims against Crosby and Giebeig were frivolous and unreasonable. <u>See</u> <u>Sullivan</u>, 773 F. 2d at 1188 (citing <u>Hughes v. Rowe</u>, 449 U.S. 5, 14-15 (1980) and <u>Christiansburg</u>, 434 U.S. at 421, for the proposition that it is important for a district court to resist the understandable temptation to engage in post hoc reasoning by concluding that because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation).

As reflected in the Court file of this action, Crosby's and Giebeig's interrogatories requested Plaintiff to identify the specific proof he believed would support his cause of action.[1] Plaintiff

---

[1] <u>See</u> Plaintiff's initial interrogatory responses referenced in Crosby's and Giebeig's Motion to Compel Answers to Interrogatories to Plaintiff and Other Discovery and Incorporated Memorandum of Law, dated April 28, 2003.

initially had nothing to offer, but his own opinion. Id. This is reflected in his deposition testimony, that was filed with the Court in support of summary judgment, and in Plaintiff's initial interrogatory answers which provide "discovery ongoing" as Plaintiff's answer for facts to support his allegations. As a result of Plaintiff's refusal to offer sufficient proof to support his allegations, Crosby and Giebeig were required to obtain Court intervention to compel supplemental answers to their interrogatories on two separate occasions. [2]

Plaintiff's counsel reviewed and obtained thousands of documents in an effort to establish additional evidence to support Plaintiff's claims. Despite this discovery, many of Plaintiff's supplemental answers to interrogatories amounted to conclusory recitations of the allegations in the Complaint. Plaintiff also relied heavily upon the testimony of Ron McAndrew as an alleged expert witness, but as stated in Crosby's and Giebeig's Motions for Summary Judgment, Mr. McAndrew's testimony is conclusory and offers no real proof of Plaintiff's allegations.

Despite Plaintiff's dilemma, Plaintiff made no reasonable effort to resolve his claims against Crosby and Giebeig by way of settlement. Plaintiff's counsel contacted the undersigned counsel on September 29, 2003 to discuss settlement; however, Plaintiff's unreasonable demand of $1,000,000.00 and his counsel's statement that Plaintiff would not agree to settle for a nuisance value or an amount to avoid future defense costs precluded any counter offer. Especially since Plaintiff rejected a prior offer to settle on April 10, 2000 that was made before significant legal expenses were incurred. Plaintiff's counsel also made it known on September 29, 2003 that he was aware that dispositive motions would be filed for Crosby and Giebeig. Accordingly, Plaintiff was aware his claims against Crosby and Giebeig could be dismissed prior to trial which could also lead

---

[2] See Order of May 11, 2003 and Order of September 26, 2003.

9

to a judgment against Plaintiff for attorney's fees and costs.

Plaintiff's subjective belief that his claims were not frivolous should not be accepted as a defense to this claim for attorney's fees under § 1988 because the Eleventh Circuit has ruled that a district court may award attorney's fees to a prevailing defendant upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith. <u>Bruce v. City of Gainesville, Ga.</u>, 177 F. 3d at 951; citing <u>Christiansburg</u>, <u>supra</u>. In this case, Plaintiff may argue that his Complaint against Crosby and Giebeig was filed upon the belief that additional evidence would be obtained against Crosby and Giebeig during the course of the litigation. Without commenting on Plaintiff's initial filing without sufficient foundation, Plaintiff's continued efforts to pursue his claims against Crosby and Giebeig after it was clear there was no cause of action is further proof that attorney's fees and costs should be awarded.

Another factor this Court should consider when determining whether Plaintiff's lawsuit was frivolous, unreasonable and without foundation is Plaintiff's February 9, 2004 dismissal of his claims against the remaining Defendants with prejudice just prior to trial. Plaintiff may argue his remaining claims were not pursued upon the belief that even if he were successful at trial, the financial status of the remaining Defendants would lead to a worthless judgment. However, this argument does not change the fact that Plaintiff chose to voluntarily dismiss his claims on the eve of trial which precluded the possibility of obtaining any judgments that could establish the viability of any claim Plaintiff brought in this action.

Additionally, Plaintiff filed a state action based on negligence for the same cause of action in the Circuit Court in Leon County (Case No. 03-CA-1538) on July 7, 2003 which is believed to be pending at this time. A copy of the Complaint And Jury Demand is attached to this motion as

Exhibit "A.". The filing of the state-court claim should serve as proof that Plaintiff had serious doubts about his claims in this action and wanted to secure a "safety net" in the event the federal § 1983 action was unsuccessful. This is evidenced by the timing of Plaintiff's filing, just days prior to the running of the four year statute of limitations for negligence under Florida Statute 95.11(3) and the standard of proof for Plaintiff's negligence claims, which is less rigorous than the § 1983 requirements for claims against supervisory officials such as Crosby and Giebeig. The filing of the state-court claim is another factor that supports an award of attorney's fees in this case.

<u>THE AMOUNT DUE FOR ATTORNEY'S FEES IS REASONABLE</u>

Crosby and Giebeig should be awarded the full amount of the attorney's fees claimed because the amount is reasonable. "The same legal standards are used to determine a 'reasonable' attorney's fee in all cases in which a federal statute authorizes an award of attorney's fees to a prevailing party." <u>See</u> <u>Drury Fredrico Pena, Secretary of the U.S. Dept. of Transp.</u>, 1997 U.S. Dist LEXIS 23928, * 4, Case No. 95-848-Civ-J-21B (M.D. Fla. 1997). "The methodology to determine a reasonable attorney's fee begins with the calculation of the 'lodestar' amount, which is the product of the reasonable hourly rate multiplied by the reasonable number of hours expended." <u>Id.</u> As referenced in the affidavit of the undersigned counsel that has been contemporaneously filed and served with this motion, attorney's fees have been billed at rates of $80.00, $85.00 and $95.00 an hour throughout the litigation. These are reasonable rates for attorney services in the Jacksonville area and Crosby and Giebeig are entitled to recover the costs of their attorney's fees at this rate.

Also, the number of hours invested by defense counsel in defending Plaintiff's claims is reasonable. "Compensable hours must be reasonable; excessive, redundant and otherwise unnecessary hours must be excluded and will not be shifted to the opposing party. <u>Id.</u> at *13 (citing

11

Loranger v. Stierhelm, 10 F. 3d 776, 782 (11th Cir. 1994). As referenced in the preceding motion defense counsel began working on this case over four years ago on February 10, 2000. The defense of Crosby and Giebeig began with the filing of a Motion to Dismiss on the grounds of qualified immunity which led to an appeal before the Eleventh Circuit. Subsequent to the denial of the appeal by the Eleventh Circuit, at the 12(b)(6) stage of this litigation, extensive discovery and motion practice was conducted. After the close of discovery, Motions for Summary Judgment were filed on behalf of Crosby and Giebeig which required an extensive culmination of the substantive evidence Plaintiff claimed to support his claims. In light of these efforts, Crosby and Giebeig have emerged as prevailing parties. Counsel for Crosby and Giebeig have not charged for any work that was not completely necessary for the defense of this action. By calculating the amount of fees due under the lodestar approach referenced herein there is a strong presumption that the fee is reasonable. See Drury, supra at * 5. Accordingly, Crosby and Giebeig are entitled to recover the full amount of the attorney's fees that have incurred in this action.[3]

## ATTORNEY'S FEES INCLUDE ALL REASONABLE EXPENSES

Crosby and Giebeig should also be permitted, under 42 U.S.C. 1988, to recover all reasonable expenses incurred that were connected with the litigation that are not recoverable under 28 U.S.C. § 1920 . "Where cost-shifting is expressly authorized by statute, the traditional limitations of Rule 54(d) and 28 U.S.C. §§ 1920 and 1923(a) do not apply" Id. at 1188-1189. 42 U.S.C. is a cost-

---

[3] To the extent there is case law to support a claim for the cost of litigating attorney's fees as addressed in this motion Crosby and Giebeig have included the cost of preparing this motion through March 7, 2004. Crosby and Giebeig reserve the right to claim additional fees for cost of collecting attorney's fees that will be billed from March 7, 2004 through the resolution of this motion. See Coleman Jackson v. State Bd. of Pardons and Paroles, 331 F. 3d 790, 799 (11th Cir. 2003)( holding "it is well settled that fees-on-fees are recoverable under § 1988 even though Congress did not expressly provide for fees-on-fees therein.")

shifting statute. See Dowdell v. City of Apopka, Fla, 698 F. 2d 1181 (11th Cir. 1983). While Rule 54(d) allows only those costs that are enumerated in § 1920 to be taxed, in an action that permits costs to be awarded to the prevailing party under § 1988, costs are not so limited. Stated another way "[w]here attorneys' fees are expressly authorized by statute, . . . rule 54(d) is no longer relevant." Wheeler v. Durham City Board of Education, 585 F. 2d 618, 623 (4th Cir. 1978). The statutory authorization of reasonable attorneys' fees was intended to include litigation expenses. Id. at 623. To the extent Crosby and Giebeig are also entitled to recover costs under § 1920, a separate Motion to Tax Costs is filed contemporaneously with this motion.

The instant lawsuit was initiated under the alleged authority of Title 12 U.S.C. § 1983. Since the instant lawsuit was an attempt to enforce § 1983, this Court has the discretion to award the prevailing party a reasonable attorney's fee, which includes litigation expenses. 42 U.S.C. § 1988. Crosby and Giebeig are prevailing parties in the instant case as this Court entered judgment in their favor on January 20, 2004 by granting Defendants' Motions for Summary Judgment. Utility Automation 2000, Inc. v. Choctaehatchee Elec. Coop., Inc., 298 F. 3d 1238, 1248 (11th Cir. 2002). Accordingly, Crosby and Giebeig seek to recover attorney's fees and expenses as part of the costs recoverable under § 1988.

Since the costs in this action are not limited by Rule 54(d) or § 1920, "[t]he issue of which expenses are properly chargeable to [Plaintiff] under section 1988 is not settled by reference to any predetermined list of items." Dowdell, 698 F. 2d at 1189. With the exception of routine overhead, section 1988 allows for the imposition of all reasonable litigation expenses. N.A.A.C.P. v. City of Evergreen, Ala., 812 F. 2d 1332, 1337 (11th Cir. 1987). "In this circuit, the recoverability of costs is determined by the necessities of the case; even relatively large or unusual costs may be taxed when

they are reasonably incurred; and there is no bar to complete recovery." Id. at 1191. Reasonable expenses are included as attorney's fees because "attorneys' fees and expenses are inseparably intertwined as equally vital components of litigation." Id. at 1190. "Litigation expenses such as supplemental secretarial costs, copying, telephone costs and necessary travel, are integrally related to the work of an attorney and the services for which outlays are made may play a significant role in the ultimate success of litigation . . . ." Wheeler, 585 F. 2d at 623-624.

Crosby and Giebeig reserve the right to seek the recovery of additional costs recoverable under § 1988 that may be calculated or incurred beyond the date of this motion. Crosby and Giebeig, through the undersigned law firm, have incurred expenses other than attorney's fees for long-distance telephone calls, postage and mailing, travel expenses and expenses associated with retaining experts to support the defense. All of these expenses are reasonable expenses associated with preparing for litigation. Dowdell, 698 F. 2d at 1190 n. 13. Invoices and/or other sufficient proof for these expenses and all other expenses referenced in this motion can be provided upon this Court's ruling that Crosby and Giebeig are entitled to recover these expenses or sooner should the Court so Order. Accordingly, Crosby and Giebeig should be permitted to recover from Plaintiff the expenses incurred as part of the attorney's fees awarded under 42 U.S.C. § 1988.

## Conclusion

Crosby and Giebeig are prevailing parties in the instant action. This Court has discretion to award Crosby and Giebeig reasonable attorney's fees and expenses as part of the costs of this action pursuant to § 1988. Plaintiff's lawsuit was frivolous, unreasonable and unfounded and an award of attorney's fee's and expenses in the amount is appropriate.

14

## CERTIFICATE OF SERVICE

I CERTIFY that a copy hereof has been furnished to **Guy Rubin, Esquire and Stuart M. Address, Esquire**, P.O. Box 395, Stuart, FL 34995, **Jeffrey A. Cramer, Esquire,** The Cramer Law Firm 8823 San Jose Boulevard, Suite 306, Jacksonville, FL 32217, **J. Ray Poole, Esquire,** Constagny, Brooks & Smith, 200 W. Forsyth Street, Suite 1610, Jacksonville, FL 32203-1099, **Aaron R. Wolfe, Esquire,** P.O. Box 15110, Daytona Beach, FL 32115-5110, and **Martin A. Fitzpatrick, Esquire,** P. O. Drawer 11300, Tallahassee, FL 32301 by U.S. Mail, this 9th day of March, 2004.

**GOBELMAN, LOVE, GAVIN, BLAZS & WASILENKO**

_____
Kevin A. Blazs, Esquire
Florida Bar No.: 0606383
Robert H. Ellis, Esquire
Florida Bar No.: 0152552
815 S. Main Street, Suite 300
Jacksonville, FL 32207
(904) 393-9007
Attorneys for Defendants Crosby and Giebeig

**A**

IN THE CIRCUIT COURT FOR
THE SECOND JUDICIAL
CIRCUIT IN AND FOR LEON
COUNTY

CASE NO: 0 3CA 153

WILLIE MATHEWS,

    Plaintiff,

vs.

STATE OF FLORIDA,

    Defendant.

_____/

## COMPLAINT AND JURY DEMAND

PLAINTIFF sues DEFENDANT and alleges:

### Introduction

1.     This is an action for damages which exceeds $15,000, exclusive of interest, costs or attorney fees.

2.     Plaintiff, WILLIE MATHEWS, at all times material to this action, was a resident of Bradford County, Florida, and incarcerated on X-wing at Florida State Prison.

3.     Defendant, STATE OF FLORIDA, is a governmental entity which operates the Department of Corrections.

### Cause of Action

4.     At all times material to this action, PLAINTIFF was an inmate in the custody and care of the Florida Department of Corrections ("Department").

5.     On or about July 3, 1999, PLAINTIFF was incarcerated at Hamilton Correctional Institution ("Hamilton") in Jasper, Florida. On or about July 3, 1999, PLAINTIFF and four other inmates were accused of assaulting a male correctional officer and a female correctional officer at Hamilton (hereinafter, "the Hamilton incident").

6.  On or about July 4, 1999, because of the Hamilton incident, PLAINTIFF and the four other inmates were transported by the Department from Hamilton to Florida State Prison.

7.  Upon their arrival at Florida State Prison, several correctional officers immediately subjected PLAINTIFF and the four other inmates from Hamilton to verbal abuse. PLAINTIFF and some of the other inmates were then taken to cells in X-wing.

8.  On or about July 4, 1999, after PLAINTIFF arrived on X-wing, he was approached by several correctional officers. These officers severely beat PLAINTIFF about the head and the ribs. PLAINTIFF sustained cuts, bruises and other injuries from this beating.

9.  On or about July 5, 1999, at approximately 9:00 a.m., while PLAINTIFF was in his cell on X-wing, several correctional officers removed PLAINTIFF from his cell and escorted him to another area. One of the officers placed a pillowcase over the PLAINTIFF'S head and affixed a noose around PLAINTIFF'S neck. PLAINTIFF was knocked to the ground and dragged down a staircase. PLAINTIFF was then severely and maliciously beaten by several correctional officers. PLAINTIFF sustained severe injuries to his head and body as a result of this beating. During this beating, several of the foregoing correctional officers taunted the PLAINTIFF with racial epithets, and stated, "Nigger, we're going to kill your black ass. Welcome to FSP." After the beating, PLAINTIFF was told by these officers, "This happened at Hamilton, right? If you say otherwise, we'll send you home feet first."

10.  On or about July 10, 1999, PLAINTIFF was taken from his cell on X-wing to a hearing on the incident at Hamilton. The attitude of the correctional staff during the hearing was extremely hostile to the PLAINTIFF. PLAINTIFF was threatened with bodily harm by several correctional officers.

11.  After the hearing, several correctional officers beat the PLAINTIFF severely about the head and body, striking PLAINTIFF on his jaw with such force that PLAINTIFF'S

jawbone was fractured. PLAINTIFF was threatened with further bodily injury if he reported this assault.

12. On or about July 10, 1999, after the hearing, various correctional officers and/or staff observed the beating PLAINTIFF and deliberately failed to stop the assault on PLAINTIFF.

13. After the July 10, 1999 beating, PLAINTIFF experienced excruciating and prolonged pain in his jaw and throughout his body. PLAINTIFF was too terrorized by the threats of further harm to immediately seek medical assistance.

14. During this time, several of the other inmates transported from Hamilton with the PLAINTIFF were also subjected to verbal abuse and severe beatings by the various correctional officers. These beatings were inflicted by the correctional officers in retaliation for the Hamilton incident.

15. During this time, at the direction of Warden Crosby, the videotape cameras that were present on X-wing were not used to record the activities of the correctional officers or inmates on X-wing, even though the Warden was aware that correctional staff was less likely to abuse inmates when the videocameras were operating.

16. On or about July 12, 1999, PLAINTIFF'S mother Justine Mathews, contacted Warden Crosby and told him that the PLAINTIFF was in danger due to the actions of the various correctional officers.

17. On and after July 12, 1999, Warden Crosby failed to adequately investigate Ms. Mathews' statements, failed to take any steps to protect the PLAINTIFF, and failed to take any steps to ensure that PLAINTIFF received adequate medical attention.

18. On or about July 12, 1999, PLAINTIFF spoke with another correctional officer and told him that he had been beaten repeatedly by various correctional officers. PLAINTIFF informed the correctional officer that his jaw had been broken during a beating. The

3

correctional officer failed to adequately investigate the PLAINTIFF'S complaints and failed to take any steps to aid or protect the PLAINTIFF.

19.  On or about July 12, 1999, PLAINTIFF was finally provided with some medical attention. PLAINTIFF was examined at Florida State Prison. Several correctional officers were present in the room during this examination.

20.  On or about July 12, 1999, PLAINTIFF told the medical staff that his jaw was injured and very sore. Despite PLAINTIFF'S complaints and obvious injuries, Plaintiff's condition was diagnosed as a "cavity" and antibiotics were prescribed for treatment.

21.  The failure to accurately diagnose, treat, and report PLAINTIFF'S condition was, at best, negligent.

22.  The failure to accurately diagnose, treat, and report PLAINTIFF'S condition caused PLAINTIFF to experience an unreasonable delay in the appropriate treatment of his injuries.

23.  Thereafter, PLAINTIFF continued to report that he was experiencing pain in his jaw and that he believed his jawbone to be fractured. PLAINTIFF failed to receive adequate medical care during this time.

24.  On or about July 13, 1999, a correctional officer telephoned Justine Mathews and falsely stated that he had spoken with the PLAINTIFF and that the PLAINTIFF was "fine." The purpose of this false statement was to prevent the PLAINTIFF from obtaining aid from outside the prison, and to prevent persons from outside the prison from learning of the violent assaults perpetrated on the PLAINTIFF and the other inmates involved in the Hamilton incident.

25.  On or about July 15, 1999, PLAINTIFF filed an emergency grievance pursuant to the Department's inmate grievance procedure. The grievance stated that PLAINTIFF feared for his life and that PLAINTIFF believed that his jaw was broken. The grievance also stated that other inmates on X-wing had been beaten. The Defendant, through its

4

Department of Corrections, failed to take any adequate steps to provide protection or adequate medical assistance to PLAINTIFF in response to this grievance.

26. On or about July 16, 1999, a pureed diet was prescribed for PLAINTIFF. This action utterly failed to provide PLAINTIFF with adequate medical treatment for his fractured jaw and consequent pain and disability.

27. On or about July 17, 1999, Florida State Prison inmate Frank Valdes complained to correctional officers on X-wing that PLAINTIFF, along with the other four inmates who had been transferred from Hamilton, had been beaten by officers and denied medical care. In retaliation for Valdes' speaking out on behalf of the PLAINTIFF, several correctional officers on X-wing severely beat and ultimately fatally injured inmate Valdes.

28. On or about July 19, 1999, PLAINTIFF was transported to the North Florida Reception Center, where he was diagnosed with a fracture of the jawbone.

29. PLAINTIFF was then taken to the Shands Hospital, where he underwent surgery for the repair of his fractured jawbone. The surgical repair required the insertion of a metal plate onto PLAINTIFF'S jawbone. PLAINTIFF'S recovery was painful and prolonged. In spite of the surgery, PLAINTIFF suffers from permanent scarring, pain and disability of the jaw.

30. On or about the last week of July, 1999, PLAINTIFF was transferred to Union Correctional Institution ("Union") in Raiford, Florida, which is located only a short distance from Florida State Prison.

31. After PLAINTIFF'S arrival at Union, and even while he was in the prison infirmary recuperating from surgery, PLAINTIFF was subjected to numerous threats of bodily harm by correctional officers because he had reported the beating incidents at Florida State Prison.

32.    In particular, one correctional officer stated to PLAINTIFF that PLAINTIFF "had already run his mouth and f****d things up and the guards should have finished the job at FSP." This correctional officer also stated, "I'll finish the job. Me and [another correctional officer] are good friends. The first chance I get, I'm gonna f**k you up."

33.    PLAINTIFF continues to fear additional threats and beatings by correctional officers because he has reported the beating incidents that occurred at Florida State Prison.

34.    On and prior to July 4, 1999, Warden Crosby was aware that the various correctional officers involved had a propensity for abusive and violent behavior toward inmates housed on X-wing.

35.    On and prior to July 4, 1999, Warden Crosby was aware that PLAINTIFF and the other inmates transferred from Hamilton were at greater risk of being subjected to abuse and violence by correctional staff at Florida State Prison because they had been accused of injuring correctional officers.

36.    On and prior to July 4, 199, Warden Crosby was aware that the lack of operating videotape cameras on X-wing increased the likelihood that correctional officers would abuse and assault inmates housed on X-wing.

37.    Despite Warden Crosby's knowledge as set forth above, Warden Crosby, at best, acted negligently to the risk of serious harm faced by the PLAINTIFF while he was housed on X-wing.

38.    In his capacity as Warden of Florida State prison, Crosby was responsible for properly training, supervising, and disciplining of correctional officers with regard to the proper care and treatment of inmates.

39.    Warden Crosby failed to properly supervise, train and discipline the correctional officers, and such failure cause a deprivation of PLAINTIFF'S rights.

40.    In his capacity as Warden of Florida Sate Prison, Crosby is responsible for investigating allegations of inmate abuse by correctional officers. Warden Crosby, at best, negligently

failed to properly investigate the allegations concerning the beatings suffered by the PLAINTIFF and the other inmates on X-wing. As a result of Warden Crosby's actions and inactions, PLAINTIFF suffered severe bodily and emotional injuries.

## COUNT I: NEGLIGENCE

41. PLAINTIFF restates and incorporates by reference the allegations set forth in paragraphs 1 through 40, above.

42. DEFENDANT had a duty to properly train and supervise the correctional officers employed by the Department of Corrections.

43. DEFENDANT had a duty to ensure that its correctional officers obeyed all rule, regulations, and policies of the Department of Corrections.

44. DEFENDANT breached said duty of proper training and/or supervision.

45. DEFENDANT'S breach was the proximate cause of PLAINTIFF's injuries, including, but not limited to, permanent injuries to his jaw, face, ribs, spine, severe pain and suffering, emotional and mental distress, and humiliation and degradation.

WHEREFORE, PLAINTIFF demands judgment for damages, costs, attorney fees, and any other relief which the Court determines is appropriate.

### Jury Trial Demand

PLAINTIFF demands trial by jury.

Respectfully submitted,

7/3/03

Guy Bennett Rubin, Esq., FBN 691305
Stuart M. Address, Esq., FBN 989606
Rubin & Rubin
P.O. Box 395
Stuart, Florida 34995
(772) 283-2004
(772) 283-2009 facsimile

7